Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# OPINION

Nos. 04-08-00236-CR and 04-08-00237-CR

Eduardo **VALTIERRA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kendall County, Texas
Trial Court No. 4610 and 4611
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Chief Justice
            Karen Angelini, Justice
            Rebecca Simmons, Justice

Delivered and Filed:   May 27, 2009

REVERSED AND REMANDED

This appeal stems from the denial of a motion to suppress. Appellant Eduardo Valtierra argues the motion should have been granted because: (1) the officers lacked consent to enter and search the residence, and (2) the subsequent search warrant obtained by the officers was based on illegally obtained evidence and, therefore, lacked probable cause. We reverse the order of the trial court and remand this matter for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

Boerne Police Officers Pedro Jose Moncada and John Rutledge were dispatched to the Valtierra apartment to conduct a "knock and talk" in regard to a possible thirteen-year-old runaway identified as "Erica." Officer Moncada recalled speaking to a young female named Erica, in an unrelated incident, at the same residence the previous week. After Officer Moncada knocked on the door of the residence, Heriberto Valtierra (Appellant Eduardo Valtierra's brother and co-defendant) opened the door. Officer Moncada, speaking in Spanish to Heriberto, inquired about Erica and Heriberto informed him that she was in the shower.[1] Officer Moncada then requested permission to enter the residence, and according to the officer, Heriberto gave oral consent. After both officers entered the residence, and were standing just inside the front door, Officer Moncada asked to speak to Erica. Heriberto replied, "Ah, yes. She'll come out in a minute. Erica, they're calling you." To the officers' surprise, a second adult male, later identified as Alibino Ortiz, walked out of a bedroom and into the living room. Up to that point, the officers were under the impression that only Heriberto and Erica were in the apartment.

According to Officer Moncada, he then requested permission to proceed toward the bathroom in order to talk to Erica.[2] Officer Moncada testified that Heriberto said, "Yes you can." Heriberto, however, testified that he did not give the officer permission to go any further into the residence and that the officer proceeded down the hall without permission. As Officer Moncada proceeded toward the bathroom, he looked into the bedroom on the west side of the residence and saw Appellant Eduardo Valtierra and a fourth adult male sitting on the floor next

---

[1] Both officers wore recording devices and two audio recordings were played for the trial court. The entire exchange, however, was conducted in Spanish and required an interpreter to file an English translation. Additionally, a portion of the recording is unintelligible and is the focus of a significant portion of the hearing on the motion to suppress.

[2] The trial court found that the officers could see the bathroom doorway from the entryway, but were unable to see any illegal narcotics or paraphernalia from that location.

to the bed. When the two individuals saw the officer, they quickly "stuffed" something under the bed. The officers subsequently moved Eduardo and the fourth man to the living room without incident. Officer Rutledge subsequently conducted a limited search of the bedroom where he found evidence of drug paraphernalia. Based on Officer Rutledge's discovery, the officers obtained a search warrant ultimately resulting in the discovery of narcotics, drug paraphernalia, and a stolen firearm.

The trial court denied Eduardo's pretrial motion to suppress, and filed findings of fact and conclusions of law. Eduardo subsequently entered a plea of guilty and this appeal followed.

### STANDARD OF REVIEW

An appellate court reviews a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). "The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *accord Guzman*, 955 S.W.2d at 89. As the Court of Criminal Appeals explained, "[t]his is so because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Ross*, 32 S.W.3d at 855.

"In reviewing a trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, as it did here, we determine whether the evidence, viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Id.* We then review "the trial court's legal ruling *de novo* unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the

legal ruling." *Id.* at 819; *see also Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006) (opining on why appellate courts are to apply a deferential standard of review to a trial court's determination of historical facts when that determination is based on evidence admitted at a suppression hearing). We must uphold the trial court's legal ruling if it is supported by the record and "correct on any theory of law applicable to the case," even if the trial court gave the wrong reason for its ruling. *See State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

### SEARCH OF THE RESIDENCE

Eduardo Valtierra contends the search of the apartment violated the Fourth Amendment to the United States Constitution as well as article I, section 9 of the Texas constitution. The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. amend. IV. "A warrantless police entry into a person's home is presumptively unreasonable unless it falls within the scope of one of a few well-delineated exceptions." *Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). In the present case, we must first determine whether the officers had consent to enter the residence, and second, whether Officer Moncada had specific, articulable facts upon which to justify proceeding down the hallway without a warrant.

### A. Consent to Enter the Apartment

The trial court found that "Officer Moncada received oral consent to enter the apartment from Heriberto Valtierra." We, therefore, examine the record to determine if the evidence supports this finding. *See Kelly*, 204 S.W.3d at 818. For consent to be valid it must be given freely, unequivocally, and without duress or coercion. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). Generally, the issue of "whether consent is voluntary turns on questions of fact and is determined from the totality of the circumstances . . . [and] is reviewed only for an

abuse of discretion." *Johnson*, 226 S.W.3d at 443. If the voluntariness of the consent is challenged at trial, "the State must prove the voluntariness of a consent to search by clear and convincing evidence." *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006) (quoting *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997))*; see also Figueroa v. State*, 250 S.W.3d 490, 507-08 (Tex. App.—Austin 2008, pet. denied), *cert denied*, 129 S. Ct. 1340 (2009).

### 1. Authority of Co-Occupants

"The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006); *accord Patrick v. State*, 906 S.W.2d 481, 490 (Tex. Crim. App. 1995). A third party may give consent to search property over which they have joint access or control. *Patrick*, 906 S.W.2d at 490. Where co-tenants or joint occupants live at a residence, either tenant may give the law enforcement officer consent to search the premises so long as that tenant has control over and authority to use the premises. *Randolph*, 547 U.S. at 106; *Jones v. State*, 119 S.W.3d 766, 787 (Tex. Crim. App. 2003) ("A third person may validly consent to a search when he has 'equal control and equal use of the property searched.'" (quoting *Welch v. State*, 93 S.W.3d 50, 52-53 (Tex. Crim. App. 2002)).

When the non-consenting tenant attempts to suppress the search, the courts look to whether the appellant was "both physically present *and* expressly refused consent." *Luna v. State*, 268 S.W.3d 594, 604 n.26 (Tex. Crim. App. 2008) (citing *Randolph*, 547 U.S. at 120). An officer's testimony that consent was voluntarily given can be sufficient evidence to prove the same. *Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000) (en banc); *Allridge*, 850 S.W.2d at 492.

*2. Analysis*

There is evidence in the record that Heriberto gave Officer Moncada consent to enter the residence. Although Eduardo lived at the apartment, the record does not substantiate that Eduardo was present when Heriberto gave Officer Moncada permission to enter the residence and the record is silent with regard to any express refusal on Eduardo's part. *See Luna*, 268 S.W.3d at 604 n.26. Officer Moncada testified that he requested permission to enter the residence to speak to Erica, and Heriberto told him "Yes, come on in."

The trial court was presented with the testimony of Officers Moncada and Rutledge describing the encounter. Neither officer had a weapon drawn and they were the only two officers present. The trial court, as the sole judge of witness credibility and demeanor, considered evidence regarding the conversational tone of the officers' inquiries and the absence of any threat to Heriberto or any attempt to intimidate Heriberto. Additionally, although Heriberto only spoke Spanish, Officer Moncada was fluent in Spanish and testified that Heriberto was able to understand and answer his questions. The record supports the trial court's finding of fact that Officer Moncada received consent to enter the apartment. *See Kelly*, 204 S.W.3d at 818.[3]

The evidence supports the trial court's finding that Officer Moncada received oral consent to enter the apartment and, thus supports the court's conclusion that the State proved by clear and convincing evidence that Heriberto's consent to enter the residence was voluntarily given. The trial court, therefore, did not abuse its discretion in denying the motion to suppress based on the initial consent to enter the apartment.

---

[3] Additionally, during oral argument, Eduardo's appellate counsel conceded there was evidence that Heriberto gave the officers consent to enter the residence.

**B. Basis to Proceed Further Into Apartment**

Consent to enter a residence does not, however, provide consent for a police officer to proceed further into a residence or extend consent to search the residence. *See LeBlanc v. State*, 424 S.W.2d 434, 436 (Tex. Crim. App. 1968). Once permitted into the residence, an officer may only take action in accordance with the purpose in which he was invited or allowed into the residence. *See Alberti v. State*, 495 S.W.2d 236, 237 (Tex. Crim. App. 1973); *LeBlanc*, 424 S.W.2d at 436. Accordingly, we must address whether the officers had consent to proceed further across the living room and down the hallway toward the bathroom.

The defense hotly contested the State's assertion that Heriberto gave Officer Moncada permission to proceed down the hallway. After two days of testimony, the trial court concluded that the officers were entitled to move across the living room and down the hallway based on a protective sweep and for the protection of the child.

*1. Consent to Move Down the Hallway*

There was significant testimony concerning the actual exchange between Officer Moncada and Heriberto due to an unintelligible portion of the audio recording of the events. During the motion to suppress hearing, the trial court clearly questioned the officer's testimony—that Heriberto gave his express consent to move forward—presumably because that part of the recording was unintelligible. After listening to the unintelligible portion of the recording, the trial court posed direct questions to Officer Moncada regarding the exchange between himself and Heriberto. Notably, the trial court did not find that Heriberto gave consent to proceed toward the bathroom. Rather, in its conclusions of law the trial court held: that the

officers were allowed to proceed down the hallway based on either (1) a protective sweep or (2) exigent circumstances associated with protection of the minor child.

Because the trial court did not find Heriberto consented to the officers moving toward the bathroom, we must determine whether another exception to the search warrant requirement enabled the trial court to conclude that the officers could proceed lawfully toward the bathroom based on a protective sweep and exigent circumstances. We, therefore, address the trial court's findings of fact and conclusions of law that support the officers' advancement to the bathroom.

### 2. Protective Sweep

The Fourth Amendment only protects against *unreasonable* searches and seizures and is measured in terms of a balance between the individual's privacy interest and the promotion of a legitimate governmental interest. *Maryland v. Buie*, 494 U.S. 325, 328, 331 (1990). For example, a defendant has a legitimate privacy interest in his residence, but that must be weighed against the officers' ability to protect themselves from attack. *Id*. at 327, 333 (authorizing police officers to protect themselves and others at the site: "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."); *Reasor v. State*, 12 S.W.3d 813, 816 (Tex. Crim. App. 2000). Accordingly, the Supreme Court has held that "[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 337; *accord Reasor*, 12 S.W.3d at 816. Importantly, however, officers may not conduct a protective sweep as a matter of right. *Buie*, 494 U.S. at 336; *Reasor*, 12 S.W.3d at 816. To the contrary, a sweep is permitted only

when "justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 336; *accord Reasor*, 12 S.W.3d at 816.

The issue in this case is whether either Officer Moncada or Officer Rutledge, based solely on the information they had *prior to moving down the hallway*, articulated a reasonable belief that another individual or weapons might be in the residence that could result in harm to the officers. *See Smith v. State*, No. 05-08-00139-CR, 2009 WL 332261, at *5 (Tex. App.— Dallas Feb. 12, 2009, no pet. h.) (mem. op., not designated for publication). The trial court specifically found:

> An individual walked out of one of the bedrooms and was instructed by Officer Moncada to come to the living room and sit on the couch, which the individual did without incident.

The trial court then concluded:

> Once the officers saw unknown individuals emerging from the general direction of the person whom the officers thought to be the runaway they were looking for, the officers were entitled to move across the living room and down the hallway to conduct a protective sweep and a weapon search for officer safety.

We therefore, examine the record to determine if the facts support the trial court's conclusion.

Immediately before Officer Moncada proceeded down the hallway, the officers knew the following: they had entered the residence with consent, obtained verbal confirmation that Erica was at the residence, asked to speak to Erica, and Ortiz had come out of a bedroom and was seated on the couch *without incident*. According to the officers, it was not the appearance of the first unknown individual that prompted the protective sweep. Officer Moncada believed that the protective sweep of the residence was conducted *after* he had proceeded down the hallway and discovered the two individuals in the west bedroom, not before.

> Defense counsel:      The search began before you found anything out about Erica?

| | |
|---|---|
| Moncada: | A protective sweep was conducted before I found out about Erica. |
| Defense counsel: | Okay. What's a protective sweep? |
| Moncada: | Well, after the furtive movements I was going to make sure there was nobody else in that room including a weapon that they could have thrown behind them. |
| . . . . | |
| Defense counsel: | All right. And so you felt that you needed to do a protective sweep because? |
| Moncada: | We were outnumbered. There [were] four guys already in the living room and there [were] two of us officers. |

In its findings, the trial court finds that only one individual appeared in the living room prior to Officer Moncada walking down the hallway of the residence. The remaining individuals were discovered after Officer Moncada advanced toward the bathroom. Yet, the trial court concluded that, prior to the officers' discovery of Eduardo and the fourth individual in the west bedroom, "the officers were entitled to move across the living room and down the hallway to conduct a protective sweep and a weapon search for officer safety." The testimony is uncontroverted that Heriberto and Ortiz were cordial and respectful of the officers' requests.

This evidence does not support "specific and articulable facts" of any danger to the officers sufficient to enable them to move forward under the auspices of a protective sweep. To the contrary, the testimony of the officers suggests the only protective sweep of the residence was completed *after* Officer Moncada proceeded down the hallway and *after* the officers discovered they were outnumbered two-to-one, not that the officer's proceeding down the hallway was actually part of a protective sweep triggered by the appearance of one individual. Even affording almost total deference to the trial court's findings of fact that are supported by the record, we nevertheless decide that the trial court erred in concluding that the officers articulated specific facts to warrant a belief of an unknown individual posing a danger to the officers or others. *See Alonzo v. State*, 251 S.W.3d 203, 207 (Tex. App.—Austin 2008, pet. ref'd).

Accordingly, the trial court's conclusion that the officers could proceed across the living room cannot be justified as a protective sweep. *See Buie*, 494 U.S. at 336; *Reasor*, 12 S.W.3d at 816.

### 3. Exigent Circumstances

We next examine the trial court's finding of facts regarding the possible female runaway and exigent circumstances. Upon entering the apartment, Officer Moncada asked to speak to Erica and Heriberto told him, on two different occasions, that she would come out of the bathroom and speak to him. The record also shows that Officer Moncada heard no water running. The trial court concluded that exigent circumstances existed with regard to the protection of the minor child. Specifically, the trial court held:

> The officers were permitted to move across the living room and down the hallway
> to contact the person thought to be the runaway child for her own protection and
> safety and to investigate.

There are three categories of exigent circumstances that justify an officer's warrantless entry into a private residence: "(1) to render emergency aid or assistance to persons whom they reasonably believe to be in distress or in need of assistance, (2) to prevent the destruction of evidence or contraband, [and] (3) to protect the officers from other suspects or persons whom they reasonably believe may be present, and if so, they reasonably believe may be armed and dangerous." *Stewart v. State*, 681 S.W.2d 774, 777 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd) (citations omitted); *accord McNairy v. State*, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991). Exigent circumstances are generally found in situations in which it is impracticable to secure a warrant. *See Adkins v. State*, 726 S.W.2d 250, 251 (Tex. App.—El Paso 1987), *aff'd*, 764 S.W.2d 782 (Tex. Crim. App. 1988).

Once again, we limit our inquiry to the information known to the officers *prior* to moving down the hallway. *See Rauscher v. State*, 129 S.W.3d 714, 719-20 (Tex. App.—Houston [1st

Dist.] 2004, pet. ref'd) (applying an objective standard as to the reasonableness of the officer's belief taking into account the information available to the officer at the time of the search). Ultimately, the question is whether a reasonable officer could have believed that proceeding to the bathroom to check on Erica was necessary to protect the minor child. *See Laney v. State*, 117 S.W.3d 854, 862-63 (Tex. Crim. App. 2003) (en banc) (considering exigent circumstances pertaining to the safety of a minor child).

Prior to the officers entering the residence, the officers apparently had no concerns necessitating the procurement of a warrant. In fact, Officer Moncada testified that he was at the residence a week prior to the incident and, to his knowledge, Erica was not in danger. He further testified that he did not feel the need to obtain a warrant prior to his "checking it out."

> Defense counsel: [T]here [were] no exigent circumstances for you to be at the house?
> Moncada: Other than looking for the runaway, no.

Both officers testified that over an hour passed between the time they received the information about a possible runaway and their arrival at the residence.

Understanding the timeline in this case is imperative. Officer Moncada walked down the hallway, toward the bathroom, within a minute or two of the officers' entry into the residence. Because the officers neither perceived the need for a warrant, nor the existence of exigent circumstances prior to their entry into the residence, our inquiry in terms of exigent circumstances is confined to the time period between the officers' entry into the residence and Officer Moncada moving down the hallway. Thus, any additional facts raising a question of exigency must have been observed during that interim.

Both officers agreed that the apartment was a home and not a suspicious place: there was no evidence of a theft, and there was "no assault going on that somebody was immediately in

danger." Officer Moncada further testified that he was not trying to prevent the destruction of evidence; protect the life of himself, another officer, or anyone in the residence; or in hot pursuit of a fleeing felon. Moreover, the testimony elicited during the motion to suppress hearing articulating concern for the child was limited to Officer Moncada's statement that his purpose for walking down the hallway was for "[c]ontacting the possible runaway." Officer Rutledge testified similarly, adding that the search was not incident to arrest, and reiterating that the officers were simply "there for a runaway"—nothing else.

The record substantiates that from the time the officers entered the residence, until Officer Moncada moved across the living room, four events took place:

(1) Heriberto confirmed that the minor child was in the residence;

(2) after Heriberto called to her on at least two occasions, the suspected runaway did not come out of the bathroom and did not respond;

(3) although Heriberto told Officer Moncada that Erica was in the shower, the officer did not hear any water running; and

(4) in addition to Heriberto, Ortiz was present in the apartment.[4]

All testimony supports that Heriberto and Ortiz were both cooperative with the officers. Heriberto allowed the officers to enter the residence and Heriberto called for Erica to come out of the bathroom. Ortiz was also respectful and followed the officers' orders to sit on the couch without incident. Thus, neither the officers' exchanges with, nor actions of, either Heriberto or Ortiz justify the exigency.

Therefore, we are left with Erica's failure to answer and Officer Moncada's failure to hear water running as the basis for the exigent circumstances. *See Shepherd v. State*, 273 S.W.3d 681, 683-84 (Tex. Crim. App. 2008) (finding an emergency when the defendant's front door was open, his vehicle was not in the driveway, and after calling into the house, officers received no

---

[4] At the time Officer Moncada moved down the hallway, Eduardo and the fourth man were still located in the west bedroom and unknown to the officers.

response); *Laney*, 117 S.W.3d at 862-63 (holding that, although there was no immediate threat to a child's safety when an officer saw a child run into an unoccupied, darkened trailer after midnight, when the child did not respond to the officer's calls, there could be substantial risk of harm to the child). At the time, Officer Moncada attributed the lack of water running to his assumption that Erica was taking a bath and not a shower. Thus, the lack of running water cannot support the conclusion that Officer Moncada believed Erica was in danger. Furthermore, although Heriberto called out to Erica on two different occasions, the fact remains that less than two minutes passed before Officer Moncada made his way down the hall. Thus, the record does not support, based on her failure to respond from the bathroom, that Erica was in danger. Under these facts, a reasonable officer could not have believed that proceeding down the hallway was "necessary to protect or preserve life, or avoid a serious injury." *See Shepherd*, 273 S.W.3d at 684-85. Accordingly, the State did not meet its burden to prove that an officer reasonably concluded exigent circumstances were present. *See McNairy*, 835 S.W.2d at 107.

Because the officers' lack of lawful authority to move across the living room and down the hallway is dispositive of this appeal, we need not address the remaining issues raised on appeal. *See* TEX. R. APP. P. 47.1 (requiring concise opinions addressing only those issues "necessary to final disposition of the appeal").

### CONCLUSION

Although the record substantiates that Officer Moncada received oral consent to enter the residence, the consent to enter did not permit a search of the residence. Contrary to the State's assertions, the record does not provide clear and convincing evidence that Heriberto gave Officer Moncada permission to move across the living room and down the hallway. Moreover, taking the evidence in the light most favorable to the trial court's ruling, neither Officer Moncada nor

Officer Rutledge was able to provide specific, articulable facts available to the officers, prior to Officer Moncada proceeding down the hallway, to support either a protective sweep or a warrantless search due to exigent circumstances. Accordingly, we reverse the order of the trial court and remand this matter for further proceedings consistent with this opinion.

Rebecca Simmons, Justice

PUBLISH