NO. 07-02-0066-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 8, 2002
_____

MICAH FLETCHER,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-435,591; HON. BRADLEY UNDERWOOD, PRESIDING
_____

Before QUINN, REAVIS and JOHNSON, JJ.

Micah Fletcher (appellant) pled guilty to the offense of possession of a controlled substance. Before so pleading, he moved to suppress evidence obtained as a result of an allegedly improper search and seizure. The trial court denied the motion. It is that ruling which he now appeals. And, to secure reversal, he argues, through two issues, that there existed no evidence of specific articulable facts justifying the initial stop. We overrule the issues and affirm the judgment.

## *Background*

On or about January 16, 2001, Officer Pete Lara (Lara) of the Lubbock Police Department observed appellant in a vehicle stopped at a red light. The officer noticed that the trunk of appellant's car was "wide open" and that an "evaporative air conditioner [was] protruding from" it. Finding this to be suspicious, Lara stopped appellant and advised him that he did so because of the air conditioner. The officer then asked for a driver's license. Appellant replied that he did not have one and instead produced a "check cashing identification card." Lara returned to his vehicle to determine whether appellant was the subject of any outstanding arrest warrants. He discovered that appellant was. Furthermore, the officer received information illustrating that appellant's driver's license had been suspended, and that the registration of the vehicle appellant drove belonged to a different vehicle. At that point, Lara arrested appellant and conducted an inventory search of the car. While conducting the latter, methamphetamine was found. While searching appellant himself, incident to the arrest, the officer found marijuana on appellant's person.

Appellant moved to suppress discovery of the contraband, contending that Lara did not possess sufficient articulable facts allowing him to reasonably suspect appellant's involvement in criminal activity. At the conclusion of the hearing, the trial court denied appellant's motion.

## *Standard of Review*

The standard of review applicable to issues like that at bar is well settled. Instead of reiterating it, we cite the parties to *State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997); *Benitez v. State,* 5 S.W.3d 915 (Tex. App.—Amarillo 1999, pet. ref'd); and *State v. Clemmer*, 999 S.W.2d 903 (Tex. App.—Amarillo 1999, pet. ref'd) for an explanation of same.

## *Analysis*

Though we question the legitimacy of the initial stop conducted by Lara, we need not address whether it rendered inadmissible the evidence subsequently discovered. Instead, we conclude that the contraband was nonetheless admissible since it was discovered during a search incident to appellant's arrest on the outstanding warrants. That is, Lara's discovery of the outstanding warrants, which served as the basis for the arrest and subsequent searches, removed any taint that may have arisen from the original stop.

Simply put,

> [d]iscovery of an outstanding warrant during an illegal detention of an individual breaks the connection between the discovered evidence and the primary taint . . . [T]he independent probable cause evidenced by the valid arrest warrants demonstrates that the evidence found during the search of appellant's person was not discovered through exploitation of the initial illegal arrest.

*Reed v. State,* 809 S.W.2d 940 (Tex. App.—Dallas 1991, no pet.); *see Welcome v. State,* 865 S.W.2d 128, 133-34 (Tex. App.—Dallas 1993, pet. ref'd); *Brooks v. State,* 830 S.W.2d 817, 821 (Tex. App.—Houston [1st Dist.] 1992, no pet.); *accord, Johnson v. State*, 496 S.W.2d 72, 74 (Tex. Crim. App. 1973) (holding that the photographs of appellant taken at

the police station after a purportedly illegal arrest were admissible since, at the time the photos were taken, the appellant was also the subject of a pre-existing and valid arrest warrant involving unrelated crimes).[1] Here, while the initial detention may have been improper, Lara discovered that appellant was the subject of a valid arrest warrant. Furthermore, the contraband found on appellant and in the car was the fruit of two searches conducted once appellant was arrested via the outstanding warrant, not the initial stop. Thus, *Reed*, *Welcome*, *Brooks*, and *Johnson* control the outcome of this appeal and compel us to hold that discovery of the contraband was sufficiently attenuated from the initial detention so as to purge the contraband of any alleged taint.

Furthermore, we disagree with appellant's contention that *Reed*, *Welcome* and the other cases are distinguishable because the initial stop conducted in each was purportedly legitimate. First, no court expressly conditioned application of the rule upon the legitimacy of the initial stop. Rather, the rule, as expressed, denotes an improper stop coupled with the subsequent discovery of an arrest warrant, not a proper stop and then discovery of outstanding warrants. Furthermore, the Texas Court of Criminal Appeals in *Johnson* simply assumed that the initial stop (which was itself the supposedly unlawful arrest) was improper when it deigned to apply the rule.

Second, much like the court in *Reed*, we too opt not to hold that officers must release those otherwise lawfully subject to a valid arrest pursuant to a valid arrest warrant merely because the initial detention was questionable.

---

[1] We note that the *Reed* court relied on the opinion rendered by the Court of Criminal Appeals in *Johnson* to reach the conclusion it did.

4

> To hold otherwise would place us on the horns of a dilemma. We would have to say that the police should have released a suspect who was in their custody illegally notwithstanding the existence of warrants for that suspect's arrest, or, alternatively, that the fruits of a search incident to a legal arrest are inadmissible because the arrest would not have occurred "but for" an illegal detention. Both possibilities have serious implications and entail line drawing that we are not prepared to do.
>
> For example, if the police illegally detain a suspect and discover arrest warrants, may they release the suspect and re-arrest him and then conduct a legal search? If not, is he forever immune from the consequences of a search incident to a subsequent arrest under those same warrants?  If so, when can they re-arrest him? After he steps outside the door of the police station? A block away? The same day? And so forth.

*Reed v. State*, 809 S.W.2d 948 n.3.  So, we, like the court in *Reed*, act with some "trepidation," but nonetheless concluded that the arrest warrant provided sufficient attenuation so as to insulate discovery of the contraband from taint.  *Id.*

However, our decision should not be read as implying that an officer may detain individuals for no other reason than his hope to later discover that they are subject to arrest via a pre-existing, valid warrant.  Should that circumstance arise, then the outcome may differ as suggested in *Reed*.[2]  Nevertheless, given the precedent before us, including that by the Court of Criminal Appeals in *Johnson*, we have little choice.  Possibly, it is time to re-pave dark roads already laid.  But, it is up to those who initially laid the road to alter it.

Accordingly, we affirm the judgment of the trial court.


Brian Quinn

---

[2]This invokes scenes from those old movies wherein mysterious individuals in trench coats walk the streets during foggy, dark nights, encounter individuals at random, and ask "do you have your papers?"  If they do, they are allowed to leave; if they do not, then they are never seen again.

Justice

Publish.