# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-06-00761-CR

**Roberto Alonzo Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY
### NO. 05-7936-2, HONORABLE TIMOTHY L. WRIGHT, JUDGE PRESIDING

### O P I N I O N

The State charged Roberto Alonzo Jr., with the Class B misdemeanor of driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04(a) (West 2003). Following the trial court's denial of Alonzo's motion to suppress, Alonzo pleaded no contest. The court sentenced him to 180 days' confinement, probated for 18 months, and ordered him to pay a fine of $2,000, of which $1,250 was probated. In one point of error, Alonzo argues that the trial court erred by not suppressing evidence obtained during his investigative detention and subsequent arrest because (1) the trooper did not have reasonable suspicion to investigate him for driving while intoxicated, and (2) the trooper lacked probable cause to arrest. We will affirm the judgment.

## BACKGROUND

Shortly before midnight on November 6, 2005, Alonzo was involved in a one-car accident while traveling through Williamson County, Texas.[1]  The accident occurred on the southbound frontage road of Interstate Highway 35 near the town of Jarrell.  Texas Department of Public Safety Trooper Jason Robbins was dispatched to the scene to investigate the accident.  Upon his arrival, Robbins observed a Pontiac Grand Prix crashed into a light pole.  Based on his observations at the scene, Robbins concluded that the vehicle had driven off the right-hand side of the frontage road, sideswiped a road sign, and ultimately crashed into the light pole.

Personnel from the Jarrell Volunteer Fire Department, who were already at the scene, approached Robbins.  One of the firefighters identified Alonzo as the driver of the vehicle involved in the accident and told Robbins that there had been no other passengers.  The same firefighter, who is not identified in the record, further advised Robbins that he had witnessed Alonzo punch a hole in the rear passenger window of the wrecked vehicle and that EMS had been called to the scene.

Robbins then approached Alonzo and asked if he was okay.  Alonzo responded by telling Robbins his name.  Robbins asked what had happened and Alonzo replied, "Uh, don't worry about that."  Robbins again asked what had happened, and Alonzo gestured toward the accident, saying, "I was pretty mad and did that and I hit the window.  I was so mad it broke and that happened."

Robbins testified that Alonzo admitted to him that he had been driving the vehicle.  When asked if he was hurt, Alonzo responded, "I don't know it takes time."  Robbins inquired

_____

[1]  The facts recited herein are from the testimony and exhibits admitted at the pretrial suppression hearing.

2

further about this statement and Alonzo explained that it "takes time to feel effects from the wreck." Alonzo also stated that he was on medication, but that he did not know what kind or why he was taking it. Alonzo told Robbins that he was coming from Dallas to Austin, where he attended school, but that he did not know why he had taken the Jarrell exit.

While speaking with Alonzo, Robbins noticed that he was unsteady, swaying, and slurring his speech. Robbins also observed that Alonzo had glassy eyes and a moderate odor of an alcoholic beverage coming from his breath. Robbins asked Alonzo whether he had had anything to drink, and Alonzo initially claimed that he had not. After Robbins informed Alonzo that he smelled of alcohol and was slurring his speech, Alonzo said that was "because of the cough drops." Alonzo eventually admitted to drinking one and a half beers before leaving Dallas.

At this point, Robbins asked Alonzo to move to an area in front of the patrol car so that he could administer field-sobriety tests, but Alonzo was uncooperative and had to be asked several times before he followed the directions. Robbins attempted to perform the horizontal gaze nystagmus (HGN) test to check Alonzo's eyes for nystagmus, but Alonzo refused to look at him. According to the videotape of the encounter, Robbins repeatedly had to ask Alonzo to look at him and remind him to keep his hands by his side and not raise them or put them in his pockets.

Alonzo continued to respond to Robbins's questions in an uncooperative manner. When asked if he had diabetes, Alonzo answered that he did not know because he had not been diagnosed. When asked if he had epilepsy, Alonzo merely shrugged his shoulders. Finally, Alonzo refused to continue with the administration of the HGN test, claiming that his leg was shaky.

At this point, Robbins placed Alonzo under arrest for driving while intoxicated. Robbins testified that he had formed the opinion that Alonzo had been operating a motor vehicle

3

without the normal use of his mental and physical faculties due to the introduction of an alcoholic beverage into his system. Robbins further testified that he believed that Alonzo presented a danger to himself or others.

In a pretrial motion, Alonzo moved to suppress all statements, video recordings, and other incriminating evidence[2] obtained as a result of the detention and arrest on the grounds that Robbins lacked reasonable suspicion to detain him and later lacked probable cause to arrest him for driving while intoxicated. The trial court denied the motion to suppress, and this appeal followed.

**STANDARD OF REVIEW**

The appropriate standard of review for a suppression ruling is a bifurcated review, giving almost total deference to the trial court's findings of fact but conducting a de novo review of the court's application of law to those facts. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). The denial of a motion to suppress should be upheld if the ruling is reasonably supported by the record and correct on any theory of the law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003). We review de novo "mixed questions of law and fact" that do not turn on credibility and demeanor. *Guzman*, 955 S.W.2d at 89. Only Robbins testified at the suppression hearing and his testimony was undisputed. Thus, we will review de novo

---

[2] Other incriminating evidence included a small amount of marijuana that was found in the console of the vehicle when it was inventoried and a blood sample that Alonzo voluntarily provided at the hospital after the accident.

the question of whether under these undisputed facts, Alonzo was unlawfully detained or later unlawfully arrested.

## DISCUSSION

Alonzo contends on appeal that the trial court erred by refusing to suppress his statements and other incriminating evidence acquired during the initial detention and after his warrantless arrest.

A defendant bears the initial burden of proving that a warrantless search or seizure occurred. *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002). Once this burden has been met, the burden shifts to the State to show that the search or seizure was reasonable. *Id*. For purposes of constitutional analysis, both an investigative detention and an arrest are characterized as seizures. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). An investigative detention takes place when a citizen yields to a display of authority and is temporarily detained for purposes of an investigation. *Id.* An arrest, on the other hand, takes place when a person's freedom of movement has been restricted or restrained. *White v. State*, 601 S.W.2d 364, 365-66 (Tex. Crim App. 1980).

### The Detention

An investigative detention is improper unless the officer can point to specific articulable facts that, when combined with rational inferences drawn from those facts, would lead him to reasonably suspect that a specific person had engaged in or was or soon would be engaging in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The State bears the burden of eliciting testimony showing sufficient facts to create reasonable suspicion. *Johnson*,

5

912 S.W.2d at 236; *see also Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (holding that State has burden of establishing reasonableness of warrantless search or seizure).

Alonzo asserts that Robbins did not have reasonable suspicion to detain him for three reasons. First, he argues that Robbins did not have authority to investigate Alonzo's accident. Citing section 550.041(a) of the transportation code, Alonzo asserts that a peace officer is only permitted to investigate accidents resulting in the injury or death of a person or property damage to an apparent extent of at least $1,000. *See* Tex. Transp. Code Ann. § 550.041(a) (West Supp. 2007). Alonzo claims that Robbins did not have statutory authority to investigate the accident because no injury or death resulted from the accident and because there was no evidence showing that the property damage exceeded $1,000, other than the unsubstantiated estimate Robbins noted in his police report.[3] In essence, Alonzo argues that section 550.041(a) limits an officer's authority to investigate an accident unless the officer knows *before* he gets to the scene that the accident resulted in injury, death, or property damage of at least $1,000. We disagree that the statute imposes such limitations on peace officers.

Section 550.041(a) states:

> A peace officer who is notified of a motor vehicle accident resulting in injury to or death of a person or property damage to an apparent extent of at least $1,000 may investigate the accident and file justifiable charges relating to the accident without regard to whether the accident occurred on property to which this chapter applies.

---

[3] Robbins estimated in his report that the damage to the road sign and light pole was approximately $1,100.00. There is no evidence in the record disputing this estimate.

6

Section 550.041(a)'s reference to "property to which this chapter applies," refers to highways or other public places.[4] *See id.* § 550.001. Thus, section 550.041 permits peace officers to investigate a motor vehicle accident that involves the injury or death of a person or property damage exceeding $1,000, as well as to "file justifiable charges" relating to the accident, even if the accident did not occur on a highway or other public place. Therefore, rather than limiting the power of peace officers to investigate certain accidents, section 550.041 actually expands the circumstances where an officer may investigate and file charges.

Law enforcement officers have the authority to investigate car accidents. *Rodriguez v. State*, 191 S.W.3d 428, 444 (Tex. App.—Corpus Christi 2006, pet. ref'd); *Maxcey v. State*, 990 S.W.2d 900, 903 (Tex. App.—Houston [14th Dist.] 1999, no pet.).[5] Moreover, once a peace officer is dispatched to an accident scene, he has a duty to determine whether the accident caused death, injury, or property damage in excess of $1,000, and if so, file an accident report "not later than the 10th day after the date of the accident." Tex. Transp. Code Ann. § 550.062 (West Supp. 2007). In the present case, upon his arrival at the accident scene, Robbins observed property damage which he estimated to be over $1,000 and was informed that EMS had been called to the scene, which suggests that someone had been injured. Thus, Robbins's investigation of the accident was not only authorized, but required under section 550.062.

---

[4] Chapter 550 also applies to roads owned and controlled by a water control and improvement district and certain parking areas provided by a business. *See* Tex. Transp. Code Ann. § 550.001 (West 1999).

[5] *See, e.g.*, Tex. Transp. Code Ann. § 545.351 (West 1999) (an operator may not drive at a speed greater than is reasonable and prudent under the circumstances then existing); *id.* § 545.401 (a person may not drive a vehicle in a wilful or wanton disregard for the safety of persons or property).

Next, Alonzo asserts that there were no specific, articulable facts that would lead Robbins to reasonably suspect that Alonzo had engaged, was engaging, or soon would be engaging in criminal activity. However, while conducting the accident investigation, Robbins noticed a number of suspicious factors about Alonzo, including that he had glassy eyes, was swaying and seemed unsteady, was slurring his speech, had a difficult time answering simple questions, appeared agitated, and had a moderate odor of an alcoholic beverage coming from his breath. In addition, Alonzo admitted to drinking beer and to taking medications without knowing what he was taking or for what reason. All of these facts supported Robbins's reasonable suspicion that Alonzo had committed the offenses of driving while intoxicated and public intoxication. In light of the totality of the circumstances, Robbins was justified in further detaining and investigating Alonzo.

Finally, Alonzo contends that Robbins was not justified in detaining him under the "community-caretaking" exception to the requirement of reasonable suspicion. *See Corbin v. State*, 85 S.W.3d 272, 276-77 (Tex. Crim. App. 2002). This exception applies only when an officer making a seizure is primarily motivated by a community-caretaking purpose and the officer reasonably believes that the individual needs help.[6] *Id.* The State did not rely on the community-caretaking exception at the pretrial hearing on Alonzo's motion to suppress. In any event, because

---

[6] In evaluating whether the officer's belief that the individual needs help is reasonable, factors relevant to that determination include (1) the nature and level of the distress exhibited by the individual, (2) the location of the individual, (3) whether or not the individual was alone or had access to assistance from someone other than the police officer, and (4) to what extent the individual, if not assisted, posed a danger to himself or others. *Wright v. State*, 7 S.W.3d 148, 151-52 (Tex. Crim. App. 1999).

8

we find that Robbins properly detained Alonzo as part of his accident investigation, we need not address whether the detention was justified under the community-caretaking exception as well.

**The Arrest**

Alonzo next complains that his warrantless arrest for driving while intoxicated was improper because Robbins did not observe him committing the offense and did not have probable cause to arrest him. A police officer may not arrest an individual without a warrant unless probable cause exists with respect to the individual in question and the offense falls within one of the exceptions to the warrant requirement listed in chapter 14 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. arts. 14.01-.04 (West 2005 & Supp. 2007); *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005). Of the exceptions found in chapter 14, the only exception potentially applicable to the present case is the exception for offenses committed in the presence or view of an officer. *See* Tex. Code Crim. Proc. Ann. art. 14.01(b).[7]

Alonzo complains that his warrantless arrest for driving while intoxicated was not authorized by article 14.01 because that offense was not committed in Trooper Robbins's presence. As a general rule, an officer may not make a warrantless arrest for DWI unless probable cause exists

---

[7] Article 14.01 provides:

(a) A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

(b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.

Tex. Code Crim. Proc. Ann. art. 14.01 (West 2005).

and the DWI is committed in the presence or view of an officer. *See id.* However, if Robbins had probable cause to arrest Alonzo for public intoxication and the offense of public intoxication was committed in Robbins's presence or view, the arrest is considered valid. *See Warrick v. State*, 634 S.W.2d 707, 709 (Tex. Crim. App. 1982); *Elliott v. State*, 908 S.W.2d 590, 592 (Tex. App.—Austin 1995, pet. ref'd). "Whenever an intoxicated person is in an officer's presence and there is probable cause to arrest him for public intoxication, the officer may do so without a warrant, even though a warrantless arrest of that person for the offense of driving while intoxicated would be unlawful." *Mathieu v. State*, 992 S.W.2d 725, 728 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Moreover, "[t]he arrest is not invalid just because the officer labels the offense 'driving while intoxicated.'" *Id.*

A person commits the offense of public intoxication if the person appears in a public place while intoxicated and the intoxication is to the degree that the person may endanger himself or another. Tex. Penal Code Ann. § 49.02(a) (West Supp. 2007). In the present case, Robbins formed the opinion, based on the totality of the circumstances, that Alonzo was intoxicated and was a danger to himself or others.[8] The factors leading Robbins to this conclusion were that Alonzo had a moderate odor of alcoholic beverage on his breath, his eyes were glassy, he was swaying and seemed unsteady, he had slurred speech, he was agitated and uncooperative, and he admitted to consuming alcoholic beverages prior to the accident. Alonzo also had a difficult time answering questions and following simple directions, did not know what medications he was taking or for what reason, and did not know why he had taken the Jarrell exit off of Interstate 35 when his destination

---

[8] The parties do not dispute that the scene of the accident was a public place.

10

was Austin. In addition, Alonzo admitted to being the driver of a vehicle that had just been in an accident on the frontage road to Interstate 35. He had sideswiped a road sign, crashed his car into a light pole, and then punched a hole through the glass of his rear window. Considering the totality of the circumstances, it was not unreasonable for Robbins to believe that Alonzo was intoxicated in a public place and presented a danger to himself or others. *See Carrasco v. State*, 712 S.W.2d 120, 122 (Tex. Crim. App. 1986) (holding that where driver was involved in one-car accident and exhibited signs of intoxication, there was probable cause to believe she posed danger to herself or others); *Elliott*, 908 S.W.2d at 592 (holding that appellant posed danger because he had just driven his truck into another vehicle and "[h]ad he not been arrested, he would have been free to drive away in his truck"); *Reynolds v. State*, 902 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding that intoxicated subject, after causing accident, posed danger to himself and others because if he had not been arrested, "he would have been free to depart in his car"); *Segura v. State*, 826 S.W.2d 178, 185 (Tex. App.—Dallas 1992, pet. ref'd) (holding that appellant, who had been involved in accident, posed danger to himself or others because he "could have run or driven from the scene in an intoxicated manner").

Because there was probable cause to arrest Alonzo for public intoxication, it is unnecessary to decide if there was probable cause to arrest him for driving while intoxicated. Since Alonzo's arrest for public intoxication was lawful, the evidence obtained was not the fruit of an illegal arrest. *See Warrick*, 634 S.W.2d at 709 (holding that evidence found as result of lawful arrest for public intoxication was admissible). Accordingly, the trial court did not err in denying Alonzo's motion to suppress.

11

**CONCLUSION**

Because there was reasonable suspicion to justify Alonzo's detention and probable cause for his subsequent arrest, we affirm the trial court's judgment.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:   April 10, 2008

Publish