COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-08-00085-CR |
| Appellant, | § | Appeal from the |
| v. | § | Criminal District Court No. 1 |
| | § | |
| ABRAN ELIAS, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC#20070D04051) |
| | § | |

**O P I N I O N**

The State of Texas appeals the trial court's granting of Appellee's motion to suppress. The State argues that the law enforcement officer in the instant case had probable cause to lawfully stop and arrest or detain Appellee, and that evidence of marijuana found in a subsequent search of Appellee's van is admissible because the officer had discovered outstanding warrants during the detention. We will affirm the trial court.

On September 7, 2007, Detective Benjamin Perales advised Deputy Eduardo Sanchez that a possible drug transaction was taking place at the Super Target store located on Joe Battle Boulevard and Montwood Drive in El Paso and requested that he stay in the area until further advised. Officer Sanchez was waiting nearby, when Officer Perales informed him that police were following a brown truck into a residential area. Officer Perales later contacted Officer Sanchez and advised him that a white cargo van had pulled out of a residence, heading towards Zaragosa, and that it was possibly loaded with narcotics. Officer Sanchez began driving northeast on Zaragosa and he was advised by Officer Perales that the white cargo van was at the

intersection of Sombra Del Sol Drive and Zaragosa.

As Officer Sanchez approached Sombra Del Sol Drive and Zaragosa, he saw a white van stopped at a stop sign at the intersection and was "positioned and in a situation where [the van] would have to make a right turn." The van did not have a turn signal on to indicate a right or left turn despite having the proper equipment to signal the driver's intent to turn. A map presented at trial showed that the van could not have gone straight and would have had to make either a right or left turn onto Zaragosa. After Officer Sanchez passed the van, the van turned right onto Zaragosa, heading south. Officer Sanchez then made a U-turn and conducted a traffic stop because the van "failed to signal a right turn from that stop."

The van pulled into a nearby apartment complex and Officer Sanchez saw Appellee get out of the van; Officer Sanchez exited his vehicle and asked Appellee to stop. Officer Sanchez identified himself and instructed Appellee to wait beside the van, which Appellee did. Officer Sanchez also advised Appellee that the reason he had stopped him was because Appellee failed to use his turn signal when he turned right. Appellee agreed that he had not signaled his intent to turn right. During the stop, Officer Sanchez discovered that Appellee had prior outstanding warrants. After this discovery, Officer Sanchez put Appellee under arrest.

Officer Sanchez then had his canine partner run an exterior canine sniff of the vehicle, and the dog alerted to odor of narcotics. Officer Sanchez conducted a search of the immediate area where the canine had alerted. He then went to the driver's side, opened the door, and saw some boxes and duffel bags at the back of the vehicle. Officer Sanchez had his dog sniff the inside of the van, specifically on the duffel bags and boxes, and the dog alerted to them. Officer Sanchez opened the boxes and duffel bags and discovered bricks wrapped in cellophane tape,

-2-

which he believed was marijuana.

At Appellee's bench trial, the court took the motion to suppress under advisement. The court subsequently granted Appellee's motion to suppress and issued relevant findings of fact. In its conclusions of law, the court stated: (1) Officer Sanchez lacked reasonable suspicion or probable cause to stop and detain Appellee for committing a traffic violation in his presence while Appellee's vehicle was stopped at the intersection of Sombra Del Sol and Zaragosa; (2) Officer Sanchez lacked reasonable suspicion to believe that the traffic violation he charged Appellee with had occurred; (3) the later warrantless arrest of Appellee and search of his vehicle, not supported by probable cause or reasonable suspicion of criminal activity, were illegal; and (4) the evidence seized in Appellee's van is suppressed.

The State filed a notice of appeal on March 5, 2008, and raises two issues: (1) the trial court erred because Officer Sanchez had probable cause to lawfully stop and arrest or detain Appellee when he had committed a traffic violation in Officer Sanchez's presence; and (2) the trial court erred in granting Appellee's motion to suppress the evidence of marijuana found in his van because Officer Sanchez discovered outstanding warrants for Appellee's arrest during the detention.

We review a ruling on a motion to suppress using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997); *Newbrough v. State*, 225 S.W.3d 863, 866 (Tex.App.--El Paso 2007, no pet.). While we review *de novo* mixed questions of law and fact that do not depend on credibility or demeanor of witnesses, we review purely factual questions that depend on credibility or demeanor of witnesses for an abuse of discretion. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *Guzman*, 955 S.W.2d at 89. The trial judge is the

sole and exclusive trier of facts at a hearing on a motion to suppress. *State v. Hopper*, 842 S.W.2d 817, 819 (Tex.App.--El Paso 1992, no pet.). If the trial court has made fact findings, a reviewing court does not engage in its own factual review but decides only whether the trial judge's fact findings are supported by the record. *Id.*

In Issue One, the State contends the trial court abused its discretion in granting Appellee's motion to suppress because Officer Sanchez had sufficient reasonable suspicion or probable cause to believe that Appellee had committed a traffic violation in his presence.

A law enforcement officer may lawfully stop a motorist when the officer has probable cause to believe that the motorist has committed a traffic violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex.Crim.App. 2000). Under circumstances short of probable cause, an officer may conduct a temporary investigative detention as an exception to the general warrant requirement. *Hopper*, 842 S.W.2d at 820. To determine the reasonableness of an investigative detention, we apply the *Terry* test: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that justified the initial interference. *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997). An officer may conduct an investigative detention following a traffic stop for as long as it is reasonably necessary to effectuate the purpose of the stop. *Haas v. State*, 172 S.W.3d 42, 52 (Tex.App.--Waco 2005, pet. ref'd). However, the officer must support the stop with articulable facts, which should amount to more than a mere hunch or suspicion. *Hopper*, 842 S.W.2d at 820. The articulable facts, when combined together with the officer's personal experience and knowledge and any logical influences, must constitute sufficient reasonable suspicion that criminal activity is afoot. *Id.* If

an officer does not satisfy this standard, his investigative detention is improper. *See* U.S. CONST. AMEND. IV; *Alonzo v. State*, 251 S.W.3d 203, 207 (Tex.App.--Austin 2008, pet. ref'd).

Under the *Terry* analysis, we must first determine whether Officer Sanchez's detention of Appellee was justified at its inception. *See Terry*, 392 U.S. at 19-20, 88 S.Ct. at 1879. Officer Sanchez passed Appellee's van at approximately fifty miles per hour and drove thirty yards north on Zaragosa before he turned around and conducted the traffic stop. In his affidavit and summary, Officer Sanchez stated that the ticketable offense Appellee had committed was a failure to signal intent to make a right turn. However, at trial, Officer Sanchez testified that Appellee was stopped and stationary at the intersection when he passed Appellee. Officer Sanchez further testified that he did not see Appellee fail to use his turn signal from his vantage point, nor did he see Appellee commit any ticketable offense. Officer Sanchez stated that the required distance for a driver to signal their intent to turn right or left by law is 100 feet, and he did not see any turn signals on Appellee's van as he passed the vehicle.

Because Officer Sanchez did not see Appellee commit any traffic violations, he failed to show sufficient specific articulable facts coupled with his experience, knowledge, and logical inferences to justify the initial stop with or without probable cause. *See Hopper*, 842 S.W.2d at 820. As a result, Officer Sanchez's detention of Appellee was not justified at its inception. *See Terry*, 392 U.S. at 19-20, 88 S.Ct. at 1879. We agree with the trial court that Officer Sanchez lacked any reasonable suspicion or probable cause to believe Appellee had committed a traffic violation in his presence while Appellee's vehicle was stopped at the intersection. We also agree that Officer Sanchez did not have any reasonable suspicion to believe the traffic violation he charged Appellee with had occurred. Thus, we overrule Issue One.

In Issue Two, the State contends the trial court abused its discretion in suppressing the marijuana found in Appellee's van as fruit of an illegal detention. The State argues that even if the initial traffic stop was illegal, the discovery of Appellee's outstanding arrest warrants during his illegal detention broke the connection between any primary taint and the discovered evidence.

Texas courts have held where an officer conducts an illegal investigatory stop but discovers outstanding warrants for the defendant's arrest during the stop, the warrants serve as proper basis for the arrest and searches of defendant's person and car. *See Fletcher v. State*, 90 S.W.3d 419, 420 (Tex.App.--Amarillo 2002, no pet.). The discovery of outstanding warrants erase any taint that may have arisen from the illegal stop, and so the evidence uncovered during the search are admissible. *See id*.

On April 21, 2009, the U.S. Supreme Court handed down *Arizona v. Gant*. *See Arizona v. Gant*, 556 U.S. ---, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In *Gant*, the Court clarified that the scope of a vehicle search as articulated in *New York v. Belton* was limited by "safety and evidentiary justifications," which form the basis for the "reaching-distance rule" in *Chimel v. California*. *See Gant*, 129 S.Ct. at 1712-13; *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *Chimel* authorized police officers, when conducting a search incident to arrest, to search only the space within the "arrestee's immediate control," which is "the area from within which he might gain possession of a weapon or destructible evidence." *Gant*, 129 S.Ct. at 1714, *quoting Chimel*, 395 U.S. 763, 89 S.Ct. 2034. The *Gant* Court held that following *Chimel*'s rule, *Belton* does not authorize a search of a vehicle incident to a recent occupant's arrest after that occupant "has been secured and cannot access the interior of the vehicle." *Grant*, 129 S.Ct. at 1714. The

Court also noted it would be unlikely for officers to be "unable to fully effectuate an arrest" without risking "a real possibility" of arrestee's access to his vehicle because officers have various means of ensuring the safe arrest of recent occupants *Id*. at 1719 n.4.

The Court concluded that when an officer reasonably believes offense-related evidence might be discovered in a vehicle, the unique circumstances to the automobile context justify a search incident to arrest. *Id*. at 1714. However, in many cases where a police officer arrests a recent occupant for a traffic violation, "there will be no reasonable basis to believe the vehicle contains relevant evidence." *Id*. at 1719. The Court held that according to the specific facts of *Gant*, no evidentiary basis existed for the vehicle search because the police had arrested the defendant for driving with a suspended license, "an offense for which police could not expect to find evidence in the passenger compartment of [the defendant's] car." *Id*.

In the present case, Appellee had already exited and stepped away from the van when Officer Sanchez searched the van and found marijuana. Similar to *Gant*, the passenger compartment was not "within [Appellee's] reach at the time of the search." *Id*. Also, Appellee never consented to this search. Because Appellee did not consent to the vehicle search, and a reasonable officer could not consider Appellee capable of reaching into the area being searched, Officer Sanchez's search of Appellee's vehicle incident to his arrest was unauthorized pursuant to *Gant*. *See id*. at 1714.

Also similar to *Gant*, during the stop, the officer in this case discovered that the arrestee had outstanding warrants. *See Grant*, 129 S.Ct. at 1715. More specifically, Officer Sanchez found Appellee had outstanding warrants for a disregarded stop sign, failure to appear, and failure to maintain financial responsibility. At trial, Officer Sanchez testified that after he

discovered Appellee had warrants and placed him under arrest, he "[knew] that [Appellee's van] might possibly be loaded with narcotics," and so he used his dog to search the van. Based on the facts, we concluded that Officer Sanchez did not have a reasonable basis to believe he would find evidence of Appellee's violations with respect to disregarding a stop sign, failing to appear, and failing to maintain financial responsibility–the offenses of Appellee's arrest–in the van's passenger compartment. *See id*. at 1719. Thus, the search of Appellee's van was unreasonable in light of *Gant*, and the trial court correctly suppressed all evidence, including the evidence of marijuana, seized from Appellee's van. *See id*. Accordingly, we overrule Issue Two.

We affirm the judgment of the trial court.


April 14, 2010
                                        DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)