COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-09-00102-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | Criminal District Court No. 1 |
| | § | |
| ALVARO MAZUCA, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20090D00116) |
| | § | |

**O P I N I O N**

The State of Texas appeals the trial court's order granting Appellee's motion to suppress. Appellee was charged by indictment with intent to deliver a controlled substance, methylenedioxy methamphetamine ("ecstasy"), four grams or more but less than 400 grams. Appellee filed a pretrial motion to suppress all of the evidence, and the court granted his motion to suppress the ecstasy at the conclusion of a suppression hearing. On appeal, the State challenges the court's conclusion that the ecstasy was the fruit of an illegal detention. We affirm.

At 10 p.m. one evening, El Paso Police Officer Christopher Grijalva saw a yellow Mustang with allegedly defective taillights turning from a public roadway into a parking lot. He and his partner, Officer Chavez, initiated a traffic stop because of the alleged taillight violation. Officer Chavez approached the driver to obtain his identification and proof of insurance, while Officer Grijalva approached the passenger side of the car. According to Officer Grijalva, the window on the passenger's side was down and Appellee, who was the passenger, looked at him the entire time Officer Chavez spoke to the driver. Officer Grijalva asked Appellee for his

identification, and Appellee offered his driver's license.

After Officer Chavez obtained the driver's identification, both officers returned to their patrol car to check for outstanding warrants for the two individuals. Officer Grijalva discovered and verified that Appellee had more than one outstanding traffic warrant. At that point, Officer Grijalva approached Appellee, had him step out of the car, and asked him if he was aware of the outstanding warrants. Appellee answered in the affirmative.

Officer Grijalva then escorted Appellee to the patrol car. Before the officer conducted a pat-down search, he asked Appellee if he had anything illegal on him, and Appellee answered "yes." Appellee told the officer that he had some ecstasy pills in his front right pocket in a black pouch. Officer Grijalva then patted Appellee down, put him under custody, and placed him in the patrol car. The officer found the black pouch that contained ecstasy pills and some marijuana. Officer Grijalva placed Appellee under arrest for controlled substance penalty group one and possession of marijuana, in addition to his outstanding warrants.

Appellee filed a pretrial motion to suppress all of the evidence. After conducting a hearing, the court granted the motion. In its findings of fact and conclusions of law, the court found that Officer Grijalva's testimony was not credible with respect to the condition of the Mustang's taillights and with respect to his claim that he reasonably believed there was a violation of the Transportation Code based on the condition of the car's taillights. However, the court accepted the testimony that the officers discovered outstanding warrants for Appellee, that the officers arrested him pursuant to those warrants, that the officers conducted a search of Appellee's person incident to arrest, and that they found ecstasy on him. The court also made three conclusions of law: (1) The driver of the Mustang did not violate Section 547.322 of the

Transportation Code, which sets forth the requirements for a car's taillights; (2) the officers did not have probable cause or reasonable suspicion to perform a traffic stop; and (3) Appellee's arrest warrants "did not purge the taint of the illegal stop due to the flagrancy of the police action, the close temporaral [sic] proximity and the fact that no Miranda warnings were read."

We review a ruling on a motion to suppress using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997); *Newbrough v. State*, 225 S.W.3d 863, 866 (Tex.App.--El Paso 2007, no pet.). While we review *de novo* mixed questions of law and fact that do not depend on the credibility or demeanor of witnesses, we review purely factual questions that depend on credibility or demeanor for an abuse of discretion. *See State v. Ross*, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000); *Guzman*, 955 S.W.2d at 89. We afford almost total deference to a trial court's determination of historical facts that are supported by the record, particularly when such findings are based on an evaluation of witnesses' credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We afford the same amount of deference to a trial court's rulings applying law to fact to the extent those rulings turned on an evaluation of credibility and demeanor. *See Keehn v. State*, 279 S.W.3d 330, 334 (Tex.Crim.App. 2009). The trial judge is the sole and exclusive trier of facts at a hearing on a motion to suppress. *State v. Hopper*, 842 S.W.2d 817, 819 (Tex.App.--El Paso 1992, no pet.). If the trial court has made fact findings, a reviewing court does not engage in its own factual review but decides only whether the trial court's fact findings are supported by the record. *Hopper*, 842 S.W.2d at 819.

In its sole issue, the State contends the trial court abused its discretion in granting Appellee's motion to suppress evidence of the ecstasy. The State specifically challenges the court's conclusion of law that Appellee's outstanding arrest warrants "did not purge the taint of

the illegal stop due to the flagrancy of the police action, the close temporaral [sic] proximity and the fact that no Miranda warnings were read." The State argues the court incorrectly applied the attenuation doctrine to the facts in the present case, and that even if the initial traffic stop was illegal, Officer Grijalva's discovery of Appellee's outstanding warrants sufficiently attenuated the connection between any illegal detention and the subsequent search incident to Appellee's arrest on those warrants.

A law enforcement officer may lawfully stop a motorist when the officer has probable cause to believe that the motorist has committed a traffic violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex.Crim.App. 2000). Under circumstances short of probable cause, an officer may conduct a temporary investigative detention as an exception to the general warrant requirement. *Hopper*, 842 S.W.2d at 820. To determine the reasonableness of an investigative detention, we apply the *Terry* test: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that justified the initial interference. *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997). An officer may conduct an investigative detention following a traffic stop for as long as it is reasonably necessary to effectuate the purpose of the stop. *Haas v. State*, 172 S.W.3d 42, 52 (Tex.App.--Waco 2005, pet. ref'd). However, the officer must support the stop with articulable facts, which should amount to more than a mere hunch or suspicion. *Hopper*, 842 S.W.2d at 820. The articulable facts, when combined with the officer's personal experience and knowledge and any logical influences, must constitute sufficient reasonable suspicion that criminal activity is afoot. *Id*. If an officer does not satisfy this standard, the investigative detention is improper. *See* U.S. CONST. Amend. IV;

*Alonzo v. State*, 251 S.W.3d 203, 207 (Tex.App.--Austin 2008, pet. ref'd).

Even if Appellee's detention was illegal, the discovery of an outstanding warrant may attenuate the taint of his unlawful stop. The fruit of the poisonous tree doctrine forbids the use of evidence obtained following an illegal detention. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415-16, 9 L.Ed.2d 441 (1963). However, under the attenuation doctrine, evidence may be admitted, in spite of an initial illegal detention, if the connection between the primary illegality and the discovery of the challenged evidence has become so attenuated as to dissipate the taint. *See, e.g., Johnson v. State*, 871 S.W.2d 744, 749-51 (Tex.Crim.App. 1994). Evidence is not classified as a fruit requiring exclusion merely because it would not have been discovered "but for" the primary invasion. *Armstrong v. State*, 550 S.W.2d 25, 31 (Tex.Crim.App. 1977) (op. on reh'g). Rather, the issue is whether the evidence in question has been discovered by exploitation of the primary illegality or by means sufficiently distinguishable to be purged of the primary taint. *Id*.

Texas courts have held that the discovery of a valid warrant, even in a situation involving an illegal detention, breaks the connection between the primary taint and the subsequently discovered evidence. *See Johnson v. State*, 496 S.W.2d 72, 74 (Tex.Crim.App. 1973); *Fletcher v. State*, 90 S.W.3d 419, 420-21 (Tex.App.--Amarillo 2002, no pet.); *Lewis v. State*, 915 S.W.2d 51, 54 (Tex.App.--Dallas 1995, no pet.). The discovery of an outstanding warrant may erase any taint that arose from the illegal stop, making the evidence uncovered during the search admissible. *Johnson*, 496 S.W.2d at 74; *Fletcher*, 90 S.W.3d at 420; *Lewis*, 915 S.W.2d at 54.

In this case, Officer Grijalva testified that he and his partner stopped the Mustang because its taillights appeared to be white instead of red. The trial court found this testimony not credible

and determined instead that the taillights were red. However, the court found the officer's testimony credible regarding the discovery of the outstanding warrants, Appellee's arrest pursuant to those warrants, the search of Appellee's person incident to arrest, and the discovery of ecstasy on Appellee. We must defer to the trial court's findings of fact that are based on an evaluation of witnesses' credibility and demeanor. *See Guzman*, 955 S.W.2d at 89. Accordingly, under the *Terry* test, the officers who stopped the Mustang lacked justification to make the stop at its inception because the car's taillights were not white, as the officer testified. *See Terry*, 392 U.S. at 19-20, 88 S.Ct. at 1879.

Moreover, the officers' discovery of Appellee's outstanding warrants failed to attenuate the connection between the illegal detention and the subsequent search incident to Appellee's arrest on those warrants. In a similar case, *Fletcher*, an officer conducted a stop based on his observation that the trunk of the defendant's car was wide open and that an air conditioner protruded from it. 90 S.W.3d at 420. After running the defendant's cash checking identification card, the officer determined he was subject to outstanding arrest warrants. *Id*. The officer then arrested the defendant, and while conducting an inventory search of the defendant's car, the officer discovered methamphetamine. *Id*. He also found marijuana on the defendant while searching him incident to arrest. *Id*. The court of appeals in *Fletcher* affirmed the trial court's decision denying the defendant's motion to suppress discovery of the contraband based on the contention that the officer lacked sufficient articulable facts allowing him to reasonably suspect the defendant's involvement in criminal activity. *Fletcher*, 90 S.W.3d at 421. Although the appellate court questioned the legitimacy of the officer's initial stop, it concluded that the subsequently discovered evidence was admissible based on the officer's discovery of the

outstanding warrants, which "removed any taint that may have arisen from the original stop" under the attenuation doctrine. *Id*. This case differs from *Fletcher* in that the trial court rejected the only basis for stopping the Mustang, *i.e.*, its allegedly defective taillights. Furthermore, we share the same sentiment of "trepidation" some of our sister courts have expressed in concluding that an officer's discovery of an arrest warrant while conducting an illegal detention would provide sufficient attenuation to remove the taint from the finding of contraband. *See Fletcher*, 90 S.W.3d at 421 n.1; *Reed v. State*, 809 S.W.2d 940, 948 n.3 (Tex.App.--Dallas 1991, no pet.). We do not want to "encourage the seizure of suspects upon inadequate grounds while an investigation is conducted for the purpose of establishing probable cause or discovering the existence of arrest warrants." *Reed*, 809 S.W.2d at 948 n.3. For these reasons, we conclude the uncovering of Appellee's arrest warrants failed to provide sufficient attenuation so as to insulate the discovery of ecstasy from taint. As such, the trial court did not err in granting Appellee's motion to suppress. We overrule the State's sole issue.

Having overruled the State's sole issue presented for review, we affirm the trial court's judgment.

April 20, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)