IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0735-10






THE STATE OF TEXAS



v.



ABRAN ELIAS, Appellee






ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE EIGHTH COURT OF APPEALS


EL PASO COUNTY





 Price, J., delivered the opinion of the Court in which Meyers, Keasler,
Hervey and Cochran, JJ., joined. Keller, P.J., filed a concurring opinion. 
Womack and Johnson, JJ., dissented.


O P I N I O N


 In this felony prosecution for possession of marihuana, the State appealed from the
trial court's grant of the appellee's motion to suppress evidence that the appellee contended
was obtained as a result of an illegal traffic stop. The El Paso Court of Appeals affirmed the
trial court's ruling in an unpublished opinion, holding that the appellee's initial detention was
not justified by specific articulable facts to show that a traffic violation occurred, and that the
search could not be otherwise justified by the fact that, after the initial stop, the appellee was
found to have an outstanding arrest warrant that might give rise to a valid search incident to
arrest because by the time the search of the vehicle was conducted, the appellee had been
secured in the back of a squad car. (1) We granted the State's petition for discretionary review
to examine both holdings and now vacate the judgment of the court of appeals and remand
for further proceedings.

FACTS AND PROCEDURAL POSTURE

Motion to Suppress

 The appellee was indicted for the offense of possession of more than 2000 pounds of
marihuana, essentially a first degree felony carrying the possibility of an enhanced fine. (2) 
Prior to trial, the appellee filed a motion to suppress evidence stemming from his detention
in this case and a pretrial hearing was conducted. Only one witness testified at the pretrial
hearing, El Paso County Sheriff's Deputy Eduardo Sanchez, Jr.

 Sanchez testified that he was a K-9 officer assigned to the metro narcotics task force. 
At around 1:00 p.m. on September 7, 2007, Sanchez was "driving around" with his narcotics-sniffing dog when he received a radio call from Detective Benjamin Perales. Perales advised
Sanchez to be on the lookout for a white cargo van that Perales suspected "was possibly
loaded with narcotics." At around 2:00 p.m., Sanchez was traveling about fifty miles per
hour, northbound on Zaragosa, when he approached a street to his left that terminated at
Zaragosa, Sombra del Sol. Before reaching the intersection, Sanchez noticed a white Chevy
van, "positioned and in a situation where it would have to make a right hand turn" from
Sombra del Sol onto Zaragosa. As he approached the van, Sanchez noticed "that it [didn't]
have any signal directions whether either turning right or left." Sanchez passed the van and
then observed it make a right turn onto Zaragosa, heading south. Turning around on
Zaragosa, Sanchez conducted a traffic stop of the van "[b]ecause it failed to signal a right
turn from the stop."

 The appellee was alone in the van. He appeared to Sanchez to be nervous, having
attempted to get out of the driver's seat before he had even unfastened his seat belt. Though
he had no driver's license or proof of insurance, the appellee was able to produce a Texas ID
card with the correct name, date of birth, and a photo. When Sanchez asked the appellee why
he appeared so nervous, the appellee replied, "Well, I think I have some warrants." Sanchez
confirmed with his dispatcher that this was in fact the case; the appellee had warrants out "for
a disregarded stop sign, failure to appear and failure to maintain financial responsibility." 
Sanchez then advised the appellee that he had been stopped for failing to signal a turn, and
the appellee "agreed that he had not signaled." By this time, another deputy had arrived on
the scene, and the appellee was placed under arrest. Knowing that this could be the van that
Perales suspected of containing narcotics, Sanchez "got [his] canine out of [his] unit and ran
an exterior K-9 sniff of the vehicle." The drug dog alerted at both the driver's side window,
which was rolled down, and at the rear double doors of the van. Sanchez then entered the
van and found approximately 300 pounds of marihuana in duffle bags and boxes. From the
initial traffic stop to the discovery of the marihuana, Sanchez estimated, only a period of
twenty minutes elapsed. Subsequently, a search warrant was obtained for the appellee's
residence where police found the balance of the 2000 pounds of marihuana.

 On cross-examination, Sanchez first admitted that he had said nothing in his offense
report about the appellee actually admitting that he failed to signal a right turn. Next, the
following critical exchange occurred between Sanchez and defense counsel:

 Q. All right. Now, you testified that you passed [the appellee] while
he was stationary in a lawful stop - you passed him on Zaragosa. He was
stationary at Sombra del Sol?


 A. Uh-huh.


 Q. Now, you passed him?


 A. Uh-huh.


 Q. And you moved on on Zaragosa. How far did you move down when
you observed the failure to signal intent?


 A. How far did I move down after - I'm sorry.


 Q. Yes.


 A. What was the question?


 Q. You passed him?


 A. Uh-huh.


 Q. And he was stopped. He was stationary on Sombra del Sol?


 A. Uh-huh.


 Q. Am I correct?


 A. Yes.


 Q. All right. Then, you passed him. How far did you travel down
Zaragosa?


 A. About maybe 30 yards.


 Q. 30 yards?


 A. Yes, sir.


 Q. And you were able to see from 30 yards back that he made his right
turn onto Zaragosa -


 A. Yes, sir.


 Q. - without signaling intent?


 A. Yes, sir.


 Q. Sir?


 A. I saw that there was no turning signal when I passed him. As soon
as I passed him, he had -


 Q. Now, listen to my question now. You passed him?


 A. Uh-huh.


 Q. He was stationary?


 A. Uh-huh.


 Q. He hadn't initiated his right turn -


 A. Right.


 Q. - onto Zaragosa?


 A. Uh-huh.


 Q. And you passed him?


 A. Uh-huh.


 Q. And you were proceeding down Zaragosa south, I believe?


 A. No. It was -


 Q. Going north?


 A. Yes, sir.


 Q. All right. You were north. And you're saying that you - from that
vantage point, you saw him from a stationary position fail to signal intent?


 A. Okay. I -


 Q. Yes or no? That's all.


 A. Well, it's because the question you're asking me, sir, I can't -


 Q. Well, did you see him, Officer? You had passed him. You testified
to that.


 A. Yes, yes.


 Q. You passed him -


 A. Uh-huh.


 Q. - and he was stationary. He hadn't committed a ticketable offense 
yet, had he?


 A. No. He was stationary.


 Q. All right. You passed him. You proceeded 30 yards away on
Zaragosa.


 A. Uh-huh.


 Q. Now, how is it that you saw him fail to signal intent from your
vantage point?


 A. I didn't.


 Q. You didn't?


 A. No.


The prosecutor immediately took Sanchez on redirect, however, and had him testify that he
was aware that Texas law requires a motorist to signal for at least "[a] hundred feet" before
making a turn. (3) Not to be outdone, defense counsel then countered on re-cross:

 Q. But your ticketable offense, Officer, is not that he failed to signal
within a hundred feet - that he failed to signal intent to make a right turn. 
That's what you've stated in your [warrant affidavit for the search of the
residence] and your [offense report].


 A. Uh-huh.


 Q. Sir?


 A. Yes.


The trial court then interposed a question, apparently asking Sanchez to clarify whether the
appellee had been within a hundred feet of making his turn when Sanchez observed him
without a turn signal:

 THE COURT: Officer, when you decided to pass the defendant, how
close were you to the turn, the making of the turn that you're saying that he did
not signal? Was it within a hundred feet?


 THE WITNESS: Oh, yes, ma'am.


With this, Sanchez's testimony came to a close.

 In his summation to the trial court, the appellee stressed Sanchez's admission that he
had not seen whether the appellee may have been signaling a turn at the moment at which he
turned right from a stationary position because by that time Sanchez had already passed by
the intersection. There was therefore no evidence, the appellee argued, that the appellee
committed the particular traffic infraction that Sanchez purported to stop him for. As for any
failure on the appellee's part to signal a turn within a hundred feet of the intersection, the
appellee argued that this proposition was "speculative at best"--apparently because the
appellee was stationary when Sanchez observed him failing to signal a turn, rather than
moving. (4) The State replied, first of all, that because Sanchez was able to see that the appellee
did not have his turn signal on--at least as he sat stationary at the intersection--"therefore,
he did violate the law." Moreover, the State argued, once Sanchez discovered that the
appellee had warrants out for his arrest, the search that came after the appellee was arrested
pursuant to those warrants was not the fruit of any illegality stemming from the initial
detention because the warrants would attenuate the taint of any such initial illegality. For this
proposition, the State cited, inter alia, Reed v. State. (5)

 The trial court took the case under advisement. Prior to the trial court's ruling, the
appellee filed a memorandum of law in which he argued that Sanchez had admitted that he
failed to witness a "ticketable offense," and that the offense that Sanchez had declared in his
police report that he stopped the appellee for, failure to signal a turn at all, was not supported
by articulable facts, since Sanchez admitted he had not actually seen whether the appellee
was signaling at the moment he executed the turn. The trial court subsequently entered
written findings of fact and conclusions of law. (6) The pertinent findings of fact are as
follows:

 2. Deputy Sanchez passed the van going approximately 50 miles per hour
and drove 30 yards north on Zaragosa, then turned around and
conducted a traffic stop of the van, that was traveling south on
Zaragosa, for the driver's alleged failure to signal an intent to make a
right turn at the intersection.


 3. Deputy Sanchez testified that he did not see the [appellee] fail to signal
intent to turn right from his vantage point as he proceeded 30 yards
away on Zaragosa.


* * *


 5. Deputy Sanchez determined that [the appellee] had prior outstanding
warrants for a disregarded a stop sign, failure to appear, and failure to
maintain financial responsibility, and placed [the appellee] under arrest.


* * *


 7. Deputy Sanchez testified that knowing the van might possibly contain
illegal narcotics, he had his certified canine . . . conduct an exterior
"sniff" of [the appellee's] vehicle.


 8. The canine alerted to the odor of narcotics on the driver's side window
and the rear double doors of the van.


In its conclusions of law, the trial court held:


 1. Deputy Sanchez had no reasonable suspicion or probable cause to
believe that [the appellee] had committed a traffic violation in his
presence while [the appellee's] vehicle was stopped at the intersection
of Sombra del Sol and Zaragosa, in El Paso County, Texas.


 2. The Court finds no reasonable suspicion to believe that the traffic
violation charged occurred.


 3. The subsequent warrentless arrest of [the appellee] and the search of his
vehicle, not supported by probable cause or reasonable suspicion of
criminal activity, was illegal.


Based on these findings and conclusions, the trial court granted the appellee's motion to
suppress any evidence obtained in the search of the van. (7) The trial court failed to rule on the
State's alternative argument that the appellee's outstanding arrest warrants attenuated the
taint of any illegality with respect to the initial traffic detention, such that the exclusionary
rule should not apply.

In the Court of Appeals

 The State appealed. (8) In its appellate brief, the State advanced two claims. First, the
State argued that Sanchez had at least a reasonable suspicion to justify his initial detention
of the appellee and that the K-9 alert then supplied probable cause to justify his search of the
van. Secondly, the State maintained, as it had at the motion to suppress hearing, that even
assuming that the initial detention was unlawful, Sanchez's discovery of the outstanding
warrants for the appellee's arrest attenuated the taint of any initial illegality, authorizing the
appellee's arrest and Sanchez's search of the van incident to that lawful arrest.

 The court of appeals rejected both arguments. With respect to the first argument, the
court of appeals upheld what it took to be the trial court's ruling that, "[b]ecause Officer
Sanchez did not see [the appellee] commit any traffic violations, he failed to show sufficient
specific articulable facts . . . to justify the initial stop[.]" (9) In upholding that ruling, the court
of appeals observed: "Officer Sanchez stated that the required distance for a driver to signal
their intent to turn right or left by law is 100 feet, and he did not see any turn signals on [the
appellee's] van as he passed the vehicle." (10) Turning next to the State's alternative argument,
the court of appeals invoked the United States Supreme Court's then-recent opinion in
Arizona v. Gant, (11) to hold that, even assuming that the arrest warrants would attenuate the
taint of an unlawful initial detention, any search incident to the appellee's formal arrest on
those warrants was not justified. Because the appellee was not within reach of the interior
of the van when he was arrested, the court of appeals reasoned, and because there was no
basis for Sanchez to believe that evidence of the particular offenses for which he was
arresting the appellee (viz., disregarding a stop sign, failure to appear, failure to maintain
financial responsibility) might turn up there, Sanchez was not permitted under the Fourth
Amendment to search the interior of the van incident to the appellee's arrest. (12) The court of
appeals affirmed the trial court's grant of the appellee's motion to suppress.

 We granted the State's petition for discretionary review in order to review both
holdings. (13) We now hold that the court of appeals was premature in declaring the initial
detention to be illegal, and that it erred to conclude that the search of the van was
impermissible under Arizona v. Gant without also addressing an alternative argument
proffered by the State to justify that search. Accordingly, we will vacate the judgment of the
court of appeals and remand the cause to that court for further proceedings consistent with
our opinion.

THE INITIAL DETENTION

Standard of Review

 The appropriate appellate posture for review of a trial court ruling on a pretrial motion
to suppress is by now quite well established.

 [1] [T]he appellate courts, including this Court, should afford almost total
deference to a trial court's determination of the historical facts that the record
supports especially when the trial court's fact findings are based on an
evaluation of credibility and demeanor. [2] The appellate court should afford
the same amount of deference to trial courts' rulings on "application of law to
fact questions," also known as "mixed questions of law and fact," if the
resolution of those ultimate questions turns on an evaluation of credibility and
demeanor. [3] The appellate courts may review de novo "mixed questions of
law and fact" not falling within this category. (14)


When a trial court grants a motion to suppress, the State fails to request explicit findings of
facts and conclusions of law, and the trial court makes no express findings of fact and
conclusions of law of its own volition, we must presume that the trial court implicitly
resolved all issues of historical fact and witness credibility in the light most favorable to its
ultimate ruling. (15) This includes a presumption that, if the State's evidence was
uncontradicted and, if believed, would have supported admission of the evidence sought to
be suppressed, the trial court simply chose to disbelieve that uncontradicted testimony. (16) 
However, "upon the request of the losing party on a motion to suppress evidence, the trial
court shall state its essential findings." (17) By "essential findings" we mean "findings of fact
and conclusions of law adequate to provide an appellate court with a basis upon which to
review the trial court's application of the law to the facts." (18) This requirement assures that
appellate resolution of the suppression issue "is based on the reality of what happened [at the
trial court level] rather than on [appellate] assumptions that may be entirely fictitious." (19)

 In this case, the trial court made explicit findings of fact and conclusions of law that
it obviously deemed dispositive of the motion to suppress. The trial court found that Officer
Sanchez was not able to see, from his vantage point thirty yards down the road on Zaragosa,
whether the appellee was using his right turn signal at the moment he executed the right turn
from Sombra del Sol onto Zaragosa. This finding is consistent with Sanchez's express
testimony, suggesting that the trial court believed him--at least in this one particular. In our
view, however, the trial court erred to conclude that this particular finding of fact was legally
dispositive of the appellee's motion to suppress.Analysis

 Under the Fourth Amendment, a warrantless detention of a suspect that amounts to
less than a full-blown custodial arrest must be justified at least by a reasonable suspicion. (20) 
A police officer has reasonable suspicion to detain a person if he has specific, articulable
facts that, combined with rational inferences from those facts, would lead him reasonably to
conclude that the person detained is, has been, or soon will be engaged in criminal activity. (21) 
This standard is an objective one that disregards the actual subjective intent or motive of the
detaining officer and looks, instead, to whether there was an objective justification for the
detention. (22)

 The trial court in this case failed to apply the standard for reasonable suspicion
objectively. Instead of asking whether the objective facts would have justified an officer in
Sanchez's shoes in detaining the appellee, the trial court asked whether Sanchez's subjective
justification for stopping the appellee was legitimate. The trial court seems to have been
misled by the appellee's argument that Sanchez's initial traffic stop was only justifiable if
he had a reasonable suspicion to believe that the appellee failed to signal a right turn at the
moment that he actually turned. (23) But it does not matter whether the objective facts support
a detention for the specific offense Sanchez intended to detain the appellee for as long as the
facts otherwise objectively support a detention for some offense--here, the failure to signal
continuously an intention to turn for the last one hundred feet of movement before the turn. (24) 
It was uncontested--and the trial court did not find otherwise--that Sanchez was able to see,
as he approached the appellee's van at the intersection of Sombra del Sol and Zaragosa, that
there was no turn signal flashing in the moments before the appellee made the turn, when the
van was positioned within the last one hundred feet of the intersection. (25) From an objective
viewpoint, this observation would suffice to support a reasonable inference that the appellee
was about to violate Section 545.104(b) of the Transportation Code--which, indeed, he did
violate when, as Sanchez observed, he shortly thereafter executed the turn. The State is
entirely correct that, measured by the appropriately objective legal standard, Sanchez's
testimony supports a legal conclusion that there existed at least a reasonable suspicion that
a traffic infraction had occurred.

 The appellee argues, nevertheless, that we should invoke the Ross presumption that
the trial court simply disbelieved Sanchez's uncontested testimony that he observed the
absence of a turn signal even as he approached the intersection. It is true that the trial court's
written fact findings do not address this particular credibility question. But we do not deem
it appropriate to entertain the Ross presumption under these conditions. We think the more
appropriate presumption, after Cullen, is that the explicit findings of fact that the trial court
did enter are those it deemed "essential" to its ruling, and that it made no finding of fact
whatsoever with respect to other fact or credibility issues because it regarded them (however
erroneously) as peripheral or non-essential to its ultimate legal holding. In the only explicit
finding of fact bearing on the issue of Sanchez's credibility, the trial court seems to have
accepted Sanchez's testimony that he was not able to observe whether the turn signal was on
at the moment the appellee turned. The record presents no reason for us necessarily to
conclude that the trial court did not also believe the balance of Sanchez's uncontroverted
testimony--that he was able to observe, at least at some point before he was thirty yards past
the intersection, that the appellee did not have his turn signal on. There is no reason to think
that the trial court's ultimate ruling was contingent on some selective credibility
determination that it did not bother to spell out in its written findings of fact. Instead, it is
evident that the trial court simply failed to make a finding of fact with respect to the
credibility of Sanchez's assertion that he saw, as he approached and passed the intersection,
that the van was not signaling an intention to turn.

 In the absence of a specific finding of fact with respect to whether the van was
signaling an intention to turn at the moment Sanchez was approaching and passing the
intersection, we think the court of appeals should not have upheld the trial court's ruling that
the initial detention was illegal. Instead, consistent with Cullen, the court of appeals should
have remanded the cause to the trial court for entry of additional, specific findings of fact
with respect to this dispositive issue. (26) It is true that, unlike in Cullen, the record in the
instant case does not reveal that the losing party requested the trial court to make express
findings of fact and conclusions of law. But we think that the trial court, once having taken
it upon itself to enter specific findings and conclusions sua sponte, nevertheless assumed an
obligation to make findings and conclusions that were adequate and complete, covering every
potentially dispositive issue that might reasonably be said to have arisen in the course of the
suppression proceedings. (27) From the testimony and argument that was developed during the
suppression hearing, as summarized above, the trial court was on notice that the question
whether the appellee activated his turn signal within a hundred feet of the intersection was
potentially dispositive of the legality of his initial detention, yet it failed to make any express
finding with respect to this issue.

 Under these circumstances, the court of appeals should have remanded the cause to
the trial court. The omission of findings and conclusions with respect to this potentially
dispositive fact issue constitutes a "failure . . . to act" for purposes of Rule 44.4 of the Rules
of Appellate Procedure; because such a failure is remediable by way of retroactive findings
and conclusions upon remand, the court of appeals was authorized to remand the cause to 
the trial court with directions to supplement the record with the missing findings and
conclusions. (28) We hold that the court of appeals erred to affirm the trial court's ruling on the
motion to suppress without first remanding the cause for the entry of supplemental findings
of fact and conclusions of law under Rule 44.4. By this holding, we avoid the kind of
appellate speculation that we decried in Cullen, and assure that appellate review of the
legality of the initial stop will be based upon the actual findings of the judicial entity to which
the fact finding function is institutionally assigned--the trial court.

SEARCH INCIDENT TO ARREST? The court of appeals also erred to affirm the trial court's ruling solely on authority of
the Supreme Court's opinion in Arizona v. Gant. We do not take issue with the court of
appeals's conclusion that a search incident to arrest was not justified since the appellee had
stepped away from the van by the time the search was conducted, and no evidence of the
offenses for which the arrest warrants had issued could reasonably be expected to turn up
from a search of the van. Instead, we question the court of appeals's assumption that the only
possible justification for the search was as a search incident to arrest. The court of appeals
should not have affirmed the trial court's ruling on the motion to suppress on this basis
without first addressing an alternative justification for the search that the State raised on
direct appeal.

 The parties do not dispute, and the trial court found as a matter of fact, (29) that once
Sanchez stopped the appellee, he almost immediately discovered the outstanding warrants
for the appellee's custodial arrest. These arrest warrants, the State asserted at trial and on
appeal, would serve to attenuate the taint of any illegality emanating from the initial
detention. After the appellee was placed under custodial arrest pursuant to those warrants,
the State's argument proceeds, there was no constitutional impediment to Sanchez subjecting
the van to a K-9 drug sniff, since that does not constitute a search for Fourth Amendment
purposes. (30) And when the dog alerted to the presence of drugs in the van, Sanchez had
probable cause to conduct a warrantless search pursuant to the automobile exception to the
Fourth Amendment warrant requirement. (31) If the State's argument is credited, it could justify
Sanchez's warrantless search of the van, not because it was incident to the arrest, but because
there was probable cause to justify it stemming from the non-invasive K-9 sniff.

 Rather than address the merits of the State's alternative argument for the first time in
a petition for discretionary review, we will remand the cause to the court of appeals for it to
resolve it in the first instance. (32) There are two aspects of the State's argument that bear
further scrutiny. First, the court of appeals all but assumed-without-deciding that Texas law
holds that an intervening arrest warrant will in fact attenuate the taint of an initial illegal
detention. (33) For this proposition, the court of appeals cited only another court of appeals's
opinion. (34) While this Court has yet to directly weigh in on this issue, we note that a number
of other jurisdictions have held that an intervening arrest warrant may, under certain
circumstances, serve to attenuate taint, depending upon an application of the attenuation
factors of Brown v. Illinois. (35) Second, it could perhaps be debated whether the automobile
exception to the warrant requirement ought properly to be applied on the facts presented. 
This Court has suggested on at least one occasion that:

 [i]t may be that where police come upon an automobile that is parked, and a
suspect [associated with the automobile] is in custody, something more than
the inherent mobility of the vehicle is needed to establish exigent
circumstances to justify a warrantless search. (36)


Especially in light of these potential issues, which have not been briefed in this Court, it is
appropriate to remand the cause to the court of appeals for resolution of the State's
alternative argument in the first instance. The court of appeals may invite additional briefing
from the parties as it sees fit.

CONCLUSION

 In summary, the court of appeals erred in two respects in its disposition of the State's
appeal. First, it erred to affirm the trial court's grant of the appellee's suppression motion
on the basis that the initial detention was illegal without first remanding the cause to the trial
court for specific findings of fact with respect to whether the appellee failed to signal his
intention to turn within a hundred feet of the intersection. Second, it also erred to affirm the
trial court's grant of the appellee's suppression motion without first addressing the State's
alternative argument that the arrest warrants attenuated the taint of any initial illegality, and
that the K-9 sniff provided probable cause to justify the warrantless search of the van under
the automobile exception. In the event that the court of appeals, on remand, rules in the
State's favor with respect to the second issue, it should reverse the trial court's ruling on the
suppression motion and remand the cause for trial. But if the court of appeals rules in the
appellee's favor with respect to the second issue, it should then remand the cause to the trial
court for specific findings of fact and a ruling of law as to the first issue, viz: whether the
initial detention was justified by at least a reasonable suspicion that the appellee failed to
signal his intention of turning within a hundred feet of the intersection. (37) The judgment of
the court of appeals is vacated and the cause is remanded to the court of appeals for further
proceedings consistent with this opinion.


DELIVERED: April 6, 2011

PUBLISH
1. State v. Elias, No. 08-08-00085-CR, 2010 WL 1478909 (Tex. App.--El Paso, delivered
April 14, 2010) (not designated for publication).
2. See Tex. Health & Safety Code § 481.121(a) & (b)(6) ("a person commits an offense if
the person knowingly or intentionally possesses a usable quantity of marihuana[, an offense]
punishable by imprisonment . . . for life or for a term of not more than 99 years or less than 5 years,
and a fine not to exceed $50,000, if the amount of the marihuana possessed is more than 2000
pounds.").
3. See Tex. Transp. Code § 545.104(a) ("An operator shall use [a turn signal] to indicate an
intention to turn, change lanes, or start from a parked position.") & (b) ("An operator intending to
turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement
of the vehicle before the turn.").
4. Turning to the proposition that Sanchez at least observed the appellee fail to signal his
intention to turn continuously for the last 100 feet before the intersection, defense counsel
specifically argued: "Well, how does [Sanchez] know that, Your Honor? [The appellee]'s stationary
there at the stop. He's in complete compliance with the law. [Sanchez] passes him and he testifies
that he doesn't see a ticketable offense, Your Honor."
5. 809 S.W.2d 940 (Tex. App.--Dallas 1991, no pet.).
6. See State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006) (on request of losing party, trial
court is required to enter express findings of fact and conclusions of law).
7. The trial court expressly declined to rule on the admissibility of the marihuana that was
discovered in the search or the appellee's residence, however.
8. Tex. Code Crim. Proc. art. 44.01(a)(5).
9. State v. Elias, supra (slip op. at *3).
10. Id. (emphasis added). The court of appeals was mistaken to assert that Sanchez testified that
he saw no turn signal "as he passed the vehicle." He plainly testified that he saw no turn signal as
he approached and passed the intersection. He just as plainly testified that, once he was thirty yards
past the intersection, as he watched the van turn, he could not see whether the van was signaling. 
See n. 25, post.
11. 556 U.S. ___, 129 S.Ct. 1710 (2009).
12. State v. Elias, supra (slip op. at *3-*4).
13. Tex. R. App. P. 66.3(c).
14. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (quoting Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997)).
15. State v. Ross, supra, at 857.
16. Id.
17. State v. Cullen, supra, at 699.
18. Id.
19. Id. at 698 (quoting State v. Ross, supra, at 860 (Womack, J., concurring)).
20. Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). See also United States v.
Sokolow, 490 U.S. 1, 7 (1989) ("police can stop and briefly detain a person for investigative purposes
if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be
afoot, even if the officer lacks probable cause.") (internal quotation marks omitted); Brown v. Texas,
443 U.S. 47, 51 (1979) (same).
21. United States v. Sokolow, supra; Crain v. State, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). 
See Terry v. Ohio, 392 U.S. 1, 21 (1968) ("the police officer must be able to point to specific and
articulable facts which, if taken together with rational inferences from those facts, reasonably
warrant" an investigative detention).
22. See Terry v. Ohio, supra, at 21-22 ("it is imperative that the facts be judged against an
objective standard: would the facts available to the officer at the moment of the seizure . . . warrant
a man of reasonable caution in the belief that the action taken was appropriate") (internal quotation
marks omitted); see also Wiede v. State, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (in considering
legitimacy of detention, "[t]he subjective intent or motivations of law enforcement officials is not
taken into account").
23. See Tex. Transp. Code § 545.104(a) ("An operator shall use [a turn signal] to indicate an
intention to turn, change lanes, or start from a parked position.").
24. See id. § 545.104(b) ("An operator intending to turn a vehicle right or left shall signal
continuously for not less than the last 100 feet of movement of the vehicle before the turn.").
25. The court of appeals's claim that Sanchez "stated that . . . he did not see any turn signals on
[the appellee's] van as he passed the vehicle" is, at best, misleading. State v. Elias, supra (slip op.
at *3). Sanchez clearly testified on direct examination that, as he was "approaching" the van, he
noticed "that it doesn't have any signal directions whether either turning right or left." That he later
acknowledged on cross-examination that, once he had passed the van, he could no longer see
whether it was signaling a turn does not mean that at no point did he ever see that the van was not
signaling a turn within one hundred feet of the intersection. The trial court's finding of fact was
explicitly that Sanchez testified that "he did not see [the appellee] fail to signal intent to turn right
from his vantage point as he proceeded 30 yards away on Zaragosa." It is clear from Sanchez's
testimony that by this time he was well past the position of the appellee's van at the intersection of
Sombra del Sol and Zaragosa. This does not conflict with his earlier, uncontested assertion that he
saw no turn signal as he approached and passed the intersection.
26. See 195 S.W.3d at 698 ("Rule 44.4 [of the Texas Rules of Appellate Procedure] authorizes
the court of appeals to remand the case to the trial court so that the court of appeals is not forced to
infer facts from an unexplained ruling.").
27. See id. at 699 ("If the non-prevailing party fails to make the request [for express findings of
fact and conclusions of law], and the trial court does not enter findings of fact and conclusions of
law of its own accord, the non-prevailing party can still appeal any adverse ruling. In that event, our
opinion in Ross will continue to control. 32 S.W.3d at 858.") (emphasis added)).
28. See Tex. R. App. P. 44.4 ("A court of appeals must not affirm . . . a judgment . . . if . . . the
trial court's erroneous . . . failure . . . to act prevents the proper presentation of a case to the court of
appeals; and . . . the trial court can correct its . . . failure to act. * * * [T]he court of appeals must
direct the trial court to correct the error. The court of appeals will then proceed as if the erroneous
. . . failure to act had not occurred.").
29. See Finding of Fact No. 5 ("Deputy Sanchez determined that [the appellee] had prior
outstanding warrants for a disregarded a stop sign, failure to appear, and failure to maintain financial
responsibility, and placed [the appellee] under arrest."), at page 10, ante.
30. Illinois v. Caballes, 543 U.S. 405 (2005); State v. Dobbs, 323 S.W.3d 184, 188 n.11 (Tex.
Crim. App. 2010).
31. George E. Dix & Robert O. Dawson, 40 Texas Practice: Criminal Practice and
Procedure § 12.52 (2d ed. 2002), at 778-79. In its written findings of fact, the trial court expressly
found that the drug dog alerted to the van's interior. ("8. The canine alerted to the odor of narcotics
on the driver's side window and the rear double doors of the van." See page 10, ante.) To the extent
that its legal conclusion No. 3 suggests that the trial court determined that there was no probable
cause to search the van, see page 10, ante ("The subsequent . . . search of [the appellee's] vehicle,
not supported by probable cause . . ., was illegal.") , this constituted an erroneous application of law
to the facts as the trial court expressly found them. It is within the appellate court's prerogative to
conduct a de novo review of this application of law to fact. See State v. Ross, supra, at 856
(appellate courts may review de novo mixed questions of law and fact that do not turn on credibility
determinations).
32. E.g., Stringer v. State, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007) (in its discretionary
review capacity, this Court does not review issues not decided by the court of appeals, but court of
appeals could consider State's alternative argument on remand).
33. See State v. Elias, supra, at *3 ("Texas courts have held where an officer conducts an illegal
investigatory stop but discovers outstanding warrants for the defendant's arrest during the stop, the
warrants serve as the proper basis for the arrest and searches of the defendant's person and car. See
Fletcher v. State, 90 S.W.3d 419, 420 (Tex. App.--Amarillo 2002, no pet.). The discovery of
outstanding warrants erase [sic] any taint that may have arisen from the illegal stop, and so the
evidence uncovered during the search are [sic] admissible. See id."). In the trial court, the State had
cited a different court of appeals opinion for this same proposition. See n.5, ante.
34. Id.
35. 422 U.S. 590, 603-604 (1975) (temporal proximity of initial illegality to acquisition of
evidence, the presence of intervening circumstances, and the purpose and flagrancy of police
misconduct are all relevant factors in deciding whether evidence was obtained by exploitation of the
illegality such that the Fourth Amendment exclusionary rule should apply). See, e.g., People v.
Hillyard, 197 Colo. 83, 85-86, 589 P.2d 939, 941 (1979) (applying Brown factors to determine
whether taint from illegal initial detention is attenuated by detaining officer's subsequent discovery
of outstanding arrest warrant); State v. Thompson, 231 Neb. 771, 777-78, 438 N.W.2d 131, 136-37
(1989) (same); United States v. Green, 111 F.3d 515, 521-23 (CA7 1997) (same); State v. Hill, 725
So.2d 1282 (La. 1998) (same); State v. Jones, 270 Kan. 526, 17 P.3d 359 (2001) (same); United
States v. Johnson, 383 F.3d 538 (CA7 2004) (same); State v. Page, 140 Idaho 841, 845-47, 103 P.3d
454, 459-60 (2004) (same); Jacobs v. State, 128 P.3d 1085 (Okla. Crim. App. 2006) (same); State
v. Frierson, 926 So.2d 1139 (Fla. 2006) (same); United States v. Simpson, 439 F.3d 490, 494-47
(CA8 2006) (same); Golphin v. State, 945 So.2d 1174, 1190-93 (Fla. 2006) (same); State v. Martin,
285 Kan. 994, 1002-1005, 179 P.3d 457, 462-64 (2008) (same); People v. Brendlin, 45 Cal.4th 262,
195 P.3d 1074, 85 Cal.Rptr.3d 496 (2008) (same).
36. Dix & Dawson, supra, at 779 n. 6 (quoting Amos v. State, 819 S.W.2d 156, 161 (Tex. Crim.
App. 1991)). But see contra Neal v. State, 256 S.W.3d 264, 282-83 (Tex. Crim. App. 2008)
("Appellant further argues that there was no concern that the evidence in the truck would be
destroyed or lost because [appellant was] already in police custody. The automobile exception,
however, does not require exigent circumstances.").
37. In the event that the trial court, on remand (if any), should again grant the appellee's motion
to suppress, presumably the State may once again pursue an interlocutory appeal of that ruling under
Tex. Code Crim. Proc. art. 44.01(5).